The Honorable Patrick Oishi

SUPERIOR COURT OF WASHINGTON IN AND FOR KING COUNTY

| | |
|---|---|
| **3S Network, Inc.,** a California Corporation, <br><br>                    Plaintiff, <br><br> v. <br><br> **Zenisco, Inc.,** a California corporation; **Shahrokh Riahinezhad** and his **Spouse** and their marital community; **Shahrooz Taebi** and his **Spouse** and their marital community; **Individual John and Jane Does 1– 20;** and **Doe Entities 1–20;** <br><br>                    Defendants, <br><br> v. <br><br> **Saied Danesh** and the marital community of **Saied and Jane Doe Danesh, Ramin Delavari, Delavari Immigration Services.** <br><br>                    Third-Party Defendants. | No. 19-2-34369-9 SEA <br><br> DEFENDANT SHAHROKH RIAHINEZHAD'S SECOND AMENDED COUNTERCLAIMS AND THIRD- PARTY CLAIMS |

    COME   NOW   Shahrokh   Riahinezhad   ("Claimant"   or   "Mr.

SECOND AMENDED COUNTERCLAIMS, AND THIRD-
PARTY CLAIMS - 1

Mᴜʟʟᴀᴠᴇʏ, Pʀᴏᴜᴛ, Gʀᴇɴʟᴇʏ & Fᴏᴇ, LLP
2401 NW 65ᵀᴴ
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

Riahinezhad), by and through his attorneys of record Daniel A. S. Foe of Mullavey, Prout, Grenley, & Foe, LLP and Daniel Werner of Radford & Keebaugh, LLC and amend Mr. Riahinezhad's counterclaims and third-party claims as follows:

### COUNTERCLAIMS AND THIRD-PARTY CLAIMS

### I. Parties, Jurisdiction, and Venue

1.    Mr. Riahinezhad is a natural person and resides in King County, within the State of Washington.

2.    3S Network, Inc. ("3S Network" or "3S") is a Washington corporation.

3.    According to 3S's website, 3S's headquarters are in Kent, Washington, which is in King County.[1]

4.    Upon information and belief, Third-Party Defendant Saeid Danesh ("Danesh") and Azam Taghipoor are, and at all relevant times were, owners of 3S.

5.    Third-Party Defendant Ramin Delavari ("Delavari") is the owner of Third-Party Defendant Delavari Immigration Services.

6.    Upon information and belief, Delavari and Delavari Immigration Services are residents of or based in Los Angeles, California.

7.    Delavari and Delavari Immigration Services transact business in the State of Washington, including, *inter alia*, issuance of threats to Mr. Riahinezhad, who resides in Washington, through Delavari and Delavari Immigration Services'

---

[1]   *See* http://www.3snetwork.com/ (last viewed Jan. 31, 2021).

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

Washington-based counsel.

8.   At all relevant times, Delavari presented himself as an immigration consultant, though he is not licensed to practice law.

9.   Upon information and belief, Delavari Immigration Services is not registered as a business entity in any state in the United States, but is based in Los Angeles, California.

10.   At all relevant times, Delavari and Delavari Immigration Services were acting as agents of, and within the scope of that agency to, 3S and Danesh.

11.   Jurisdiction and venue for Mr. Riahinezhad's counterclaims and third-party claims are proper pursuant to RCW §§ 4.12.020, 4.12.25, and 4.28.185.

## II.  Factual Allegations

12.   Mr. Riahinezhad was born in Iran. He graduated from The University of Kashan in Iran in 1999 with a degree in Mechanical Engineering.

13.   In or around August or September 2010, Mr. Riahinezhad came across an advertisement on television placed by Delavari Immigration Services directed at Farsi speakers in Iran.

14.   In the advertisement, Delavari Immigration Services indicated it could find Iranians jobs in the United States and a legal work visa.

15.   Soon after he saw the advertisement, Mr. Riahinezhad called the telephone number in the advertisement and spoke with Delavari.  During that conversation:

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

(a)   Mr. Riahinezhad told Delavari he was a mechanical engineer with 12 years of experience.

(b)   Delavari promised Mr. Riahinezhad he would be able to secure an H-1B visa[2] for Mr. Riahinezhad to legally work in the United States for Danesh and 3S as a mechanical engineer, and a visa for Mr. Riahinezhad's wife to accompany him.

(c)   Delavari explained to Mr. Riahinezhad that the process would be faster if he entered the United States on a tourist visa; that he would get his H-1B and start working for Danesh within a month of arriving in the United States.

(d)   Delavari told Mr. Riahinezhad he would get the job through Danesh, who also is Persian.

(e)   Delavari told Mr. Riahinezhad he would have to pay Delavari 32,000 U.S. dollars for the visa and the work opportunity.  He also promised the money would secure a sponsor for Mr. Riahinezhad's H-1B visa, and permanent residency (colloquially referred to as a "green card") would be arranged for him through the H-1B process.

---

[2]   The Immigration and Nationality Act ("INA") § 101(a)(15)(H)(i)(b), 8 U.S.C. § 110l(a)(15)(H)(i)(b), provides for the admission into the United States of certain temporary workers. These workers are referred to as "H-1B workers," and "H-1B" designates the type of visa that the worker receives. Provisions related to the administration of the H-1B visa program are found in INA § 214, 8 U.S.C. § 1184, 8 C.F.R. § 214.2(h) (Department of Homeland Security regulations), and 20 C.F.R. Part 655 (Department of Labor regulations).

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

(f)   At that time, Mr. Riahinezhad reasonably understood from Delavari's description and the exorbitant fee that he was paying both for the H-1B visa and the green card.

16.   At the time Delavari made the promises to Mr. Riahinezhad described in the preceding paragraph, Delavari knew they were false.   Specifically,

(a)   Delavari did not know and had no way of knowing whether he would be able to secure an H-1B visa for Mr. Riahinezhad within one month of his entry into enter the United States.

(b)   Upon information and belief, Delavari knew he would not secure a position for Mr. Riahinezhad as mechanical engineer in the United States.

(c)   Delavari knew he and other agents of 3S would charge fees in addition to the $32,000 to secure the H-1B visa and to apply for a green card.

17.   Mr. Riahinezhad borrowed money from his parents and his brother to pay Delavari's fee.   He also sold many of his belongings.

18.   In early October 2010, Mr. Delavari sent Mr. Riahinezhad a contract via email for Mr. Devari's services.   The contract was in English.

19.   Mr. Riahinezhad signed the contract on October 7, 2010 in Iran.

20.   On October 12, 2010, Mr. Riahinezhad send $20,000 as a

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 5

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

"down payment" to Delavari via wire transfer.

21.   Mr. Riahinezhad was able to obtain a tourist visa for himself, his wife, and his son to come to the United States.

22.   Mr. Riahinezhad had to pay all of the government fees for the tourist visa.  The fees were not included in the money he had paid to Delavari.

23.   To get the tourist visa, on or about October 2, 2010, Mr. Riahinezhad had to fly to Dubai, United Arab Emirates for his U.S. consular interview the next day, and he had to fly to Dubai a second time on or about October 24, 2010 to receive the visa itself.  He had to pay about $2,000 for the trips to Dubai. He borrowed the money for this trip from members of his family.

24.   Mr. Riahinezhad purchased round-trip airfare for him, his wife, and his son to come to the United States.   Delavari told Mr. Riahinezhad he had to purchase round-trip fares, as opposed to one-way fares, to obtain his tourist visa.  The airfare cost approximately $5,000.  Mr. Riahinezhad had to borrow more money from his father to pay for the airfare.

25.   On November 13, 2010, Mr. Riahinezhad, his wife, and his son, flew to Los Angeles and entered the United States on a tourist visa.

26.   On or about November 14, 2010, Mr. Riahinezhad met with Delavari in Los Angeles.  At the meeting, Delavari told Mr. Riahinezhad that Delavari had a "good job" at a good company lined up for him at 3S, which would sponsor him for an H-1B visa.

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 6

**Mullavey, Prout, Grenley & Foe, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

27.  Delavari knew Mr. Riahinezhad would not be working at 3S as a mechanical engineer.

28.  Mr. Riahinezhad and his family stayed in a motel in Los Angeles for approximately one week, at a cost of around $800.  Mr. Riahinezhad had to borrow money from his uncle to pay for the hotel.

29.  After a week in Los Angeles, Mr. Riahinezhad realized he could not afford to continue paying for a motel room while he awaited the issuance of his H-1B visa.  He made the decision to stay with an uncle in Oklahoma.  He and his family borrowed money from his wife's uncle—approximately $700—and flew to Oklahoma.

30.  Shortly after Mr. Riahinezhad moved to Oklahoma, Mr. Riahinezhad spoke with Delavari.  Delavari told Mr. Riahinezhad he would have to pay an additional $6,000 (in addition to the $32,000) to Delavari for the sponsorship and for the visa. Delavari told Mr. Riahinezhad "Danesh wants more money, and he will not process your visa if you don't pay.  You have to pay to move forward [with the process]."  Mr. Riahinezhad agreed to pay the money because he believed he had no choice and he had already taken out so much debt for and staked so much of his livelihood on the job.

31.  After Mr. Riahinezhad agreed to pay the money, Delavari called Danesh, the owner of 3S, and Mr. Riahinezhad spoke with Danesh.  Danesh spoke at length about 3S, emphasizing that it was a good company.  Danesh is a fellow Iranian

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 7

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

immigrant and used that status to gain the trust of Mr. Riahinezhad. Danesh told Mr. Riahinezhad:

>    (a)  3S would sponsor Mr. Riahinezhad for an H-1B visa.
>
>    (b)  Because of Mr. Riahinezhad's degree and experience, he would work as a project engineer.

32.  At the time of this phone conversation, Danesh knew 3S would not employ Mr. Riahinezhad as a project engineer.

33.  Mr. Riahinezhad then waited for several months, staying with an uncle in Oklahoma, with no information about when he would be able to start working.

34.  In a country he did not know, and worried about how long he would be able to take care of himself, his wife, and his son, Mr. Riahinezhad communicated with Danesh on two or three occasions, and also with 3S Human Resources Manager Katy Lindsay, via telephone and pressed them about the status of his visa and work.

35.  Each time, Danesh and Ms. Lindsay told Mr. Riahinezhad to ask Delavari and Aron Hasson, an attorney in Los Angeles who worked with Delavari and represented 3S. Danesh told Mr. Riahinezhad that Mr. Hasson would take care of the remainder of the paperwork for the visa.

36.  In early January 2011, Riahinezhad paid $10,000 via check to Delavari. He borrowed this money from his wife's uncle.

37.  After Mr. Riahinezhad paid the additional $10,000 to

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 8

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

Delavari, 3S and Danesh submitted a petition for Mr. Riahinezhad's H-1B visa.

38.  As part of the H-1B petition process, 3S and Danesh were required to submit a Labor Conditions Applications ("LCA"), ETA Form 9035/9035E, to the United States Department of Labor ("USDOL").

39.  On January 14, 2011, as part of the LCA, Danesh signed "Declaration of Employer" attesting that he, on behalf of 3S, agreed to comply with the USDOL regulations found at 20 C.F.R. part 655, Subparts H and I and certify such compliance.  These regulations preclude a sponsoring H-1B employer from recouping its business expenses from the visa beneficiary, specifically barring recoupment of "attorney fees and other costs connected to the performance of H-1B program functions which are required to be performed by the employer (e.g., preparation and filing of LCA and H-1B petition)." 20 C.F.R. § 655.73 l(c)(9)(iii)(C). Consistent with these regulations, the USDOL specifically states on its website that an H-1B employer "may not require [an H-1B worker] to pay, either directly or indirectly, any part of the petition filing fee; or to pay a financial penalty for leaving employment before a date set in the employment contract; or to pay employer business expenses (such as attorneys' fees for preparation and filing of the H-1B Labor Condition Application)."[3]

---

[3]  *See* H-1B Workers (U.S. Department of Labor Wage and Hour Division), https://www.dol.gov/agencies/whd/workers/h1b (last viewed Feb. 2, 2021).

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

40.  On January 14, 2011, Danesh and 3S Network also signed and submitted a Form 1-129 Petition for a Nonimmigrant Worker ("I-129") to secure an H-1B visa for Mr. Riahinezhad.  3S was required to submit the LCA along with the I-129.

41.  When Danesh signed the I-129, he certified, under penalty of perjury, that "this petition and the evidence submitted with it are true and correct to the best of my knowledge."  This certification included the following representations:

> (a)  Mr. Riahinezhad would be employed at 3S as a project engineer.

> (b)  The position was not full-time.  Rather, Mr. Riahinezhad would work 30 hours per week.

> (c)  Mr. Riahinezhad's salary would be $47,392.80 per year.

42.  When Danesh signed the I-129 certification under penalty of perjury, he knew the representations described in the preceding paragraph were false.

43.  Mr. Riahinezhad never worked as a Project Engineer at 3S.

44.  Mr. Riahinezhad always worked well in excess of 30 hours per week.  In fact, during nearly every workweek, Mr. Riahinezhad worked at least 65-70 hours.

45.  If Mr. Riahinezhad had worked 30 hours per week at a salary of $47,392.80, his wage rate would have been $30.38 per hour.  In fact, even without factoring in expenses and fees Mr.

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 10

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

Riahinezhad paid that 3S legally was required to pay, he rarely earned more than $13-$14 per hour during his first several years working for 3S, and many workweeks he earned less than that.

46.  As part of the I-129, 3S also was required to fill out a form entitled "1-129 H-1B Data Collection and Filing Fee Exemption Supplement" (hereinafter referred to as the "H-1B Filing Fee form") to determine the fee the petitioner (3S) must pay to file the petition. The H-1B Filing Fee form provides that, at a minimum, a petitioner must pay a $320 filing fee and a $500 anti-fraud fee.

47.  Even though 3S, the petitioner, was required to pay the filing fee and anti-fraud fee, Mr. Riahinezhad paid both fees himself, forcing him further into debt.  These fees were not included in the fees Mr. Riahinezhad had paid to Delavari up to that point.

48.  In early February 2011, Mr. Riahinezhad's H-1B visa was approved.

49.  On or about February 4, 2011, Katy Lindsay of 3S's Human Resources Department emailed Mr. Riahinezhad an offer letter informing him he would be employed full-time as a project engineer in Dallas, Texas, his salary would be $47,500 per year, and he should report for work on February 14, 2011.

50.  On February 6, 2011, Mr. Riahinezhad countersigned the offer letter.

51.  In early February 2011, Mr. Riahinezhad paid the additional $8,000 to Delavari via check.  Mr. Riahinezhad

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

borrowed the money from his wife's uncle.

52.   Mr. Riahinezhad felt he had no choice but to pay the money because he had already borrowed and spent so much money. He was worried it would go to waste if he did not accede to Delavari's demands.

53.   The fees Mr. Riahinezhad had paid in Iran and in the United States to secure an H-1B visa and a job at 3S were "attorney fees and other costs connected to the performance of H-1B program functions which are required to be performed by the employer (e.g., preparation and filing of LCA and H-1B petition)." 20 C.F.R. § 655.73 l(c)(9)(iii)(C).

54.   In mid-February 2011, Mr. Riahinezhad moved to Dallas, Texas with his wife and son based on the job offer.

55.   As a consequence of the fees Mr. Riahinezhad had to pay in Iran and in the United States to secure an H-1B visa and job at 3S, his travel costs, and the money he had to spend to sustain and move himself and his family in the United States while he waited for his job offer and visa, Mr. Riahinezhad arrived in Dallas to start his employment at 3S with over $50,000 in debt.

56.   When Mr. Riahinezhad arrived in Dallas, he called 3S's Human Resources Department.  Human Resources provided him with an address and told him he should go there in the morning to start working.

57.   On the morning of February 14, 2011, Mr. Riahinezhad went to the address 3S's Human Resources Department had

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 12

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

provided.  It was a residential address.

58.  Mr. Riahinezhad knocked on the door of the house. Someone who appeared to have just woken up opened the door and told him to come back at 7:00 pm that evening.

59.  Mr. Riahinezhad returned to the house at 7:00 pm that evening and again knocked on the door.  The same person answered, and this time identified himself as the supervisor, Faisel Sheikh.

60.  At all relevant times, Mr. Sheikh was acting as an agent of, and within the scope of his agency to, Danesh and 3S.

61.  Mr. Riahinezhad entered the house and observed that there were about 8 to 10 people who lived there.  Mr. Riahinezhad understood they were immigrant workers, including student visa holders, from India, Pakistan, and other countries.

62.  Mr. Riahinezhad asked Mr. Sheikh about his job.  Mr. Sheikh told Mr. Riahinezhad there was not Project Engineer position.  Rather Mr. Riahinezhad would work as a Drive Testing Tech and a Driver.  This was the first time Mr. Riahinezhad learned he would not be a Project Engineer for 3S.

63.  In fact, there was no project engineer position at 3S's operations in Dallas.  The only project 3S had there was drive testing to monitor cell phone signal frequencies.

64.  For the first few days of work at 3S, Mr. Riahinezhad reported to the house in the evening, where he would wait for several hours until someone was available to take him on a training drive. Mr. Riahinezhad would then ride along on the

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 13

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

training drive.

65.   After a few days, Mr. Sheikh told Mr. Riahinezhad, "you can drive," and told him the route.

66.   For the first three to four months of work, Mr. Riahinezhad would start driving at 7:00 or 8:00 pm and finish at between 6:00 am and 9:00 am the next day.  On a typical night, he would drive 200-300 miles.  Another 3S employee would sit in the back seat and monitor cellular phone signal frequencies on a laptop.  At the end of his driving shift, Mr. Riahinezhad would leave the car at the company's house and go home to his apartment.

67.   After three or four months, Mr. Riahinezhad continued to work the same hours, but would sometimes sit in the back seat of the vehicle monitoring cellular phone signal frequencies while another employee drove.

68.   Monitoring cellular phone signal frequencies on the laptop did not require any technical skills beyond knowing how to turn on the computer, turn on the scanner, open the program, and save files.

69.   While Mr. Riahinezhad did this work for 3S, he worked six days per week; approximately 65-70 hours per week, and sometimes more.  Most weeks, he was able to take Sundays off.  However, he had to work Sundays some weeks.  During at least one two-week pay period, Mr. Riahinezhad worked 150 hours.

70.   3S paid Mr. Riahinezhad every two weeks.  3S provided wage statements to Mr. Riahinezhad along with his wages.  The

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

wage statements falsely indicated Mr. Riahinezhad worked 40 hours per week.

71.  At the end of each pay period, Mr. Riahinezhad put his actual hours into 3S's ADP payroll system.  However, 3S's supervisory staff or human resources staff would change the hours to falsely show Mr. Riahinezhad only worked 80 hours in the pay period.

72.  3S never paid Mr. Riahinezhad any overtime premiums for his work, though he always worked well over 40 hours per week.

73.  After a few months of work, Mr. Sheikh told Mr. Riahinezhad he had to travel to Tulsa, Oklahoma for one week of work.  Though this would mean he would be away from his family, Mr. Riahinezhad believed he had no choice but to make the trip.

74.  While in Tulsa, Mr. Sheikh made Mr. Riahinezhad continue to do the same work he had done in Texas, but on an even more grueling schedule.

75.  Mr. Sheikh's promise that Mr. Riahinezhad would only be in Oklahoma for a week was a ruse.  Danesh kept Mr. Riahinezhad in Tulsa for over four months.  During that time, 3S would not allow Mr. Riahinezhad to see his family in Texas. Though 3S paid for a rundown hotel room he had to share with other workers, 3S did not pay for Mr. Riahinezhad's food or other expenses.

76.  On another occasion, Mr. Sheikh made Mr. Riahinezhad drive non-stop from Dallas to Miami, Florida and refused to pay

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 15

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

for a hotel.  He had to drive 18-20 hours straight each way.

77.  Mr. Riahinezhad remained in Miami for about one month. While there, he lived with seven or eight other workers crowded into a small house.  Though 3S provided the house, Mr. Riahinezhad had to pay for his own food and other living expenses.

78.  3S also made Mr. Riahinezhad go to Arkansas for about one month.  Again, 3S put Mr. Riahinezhad in a rundown hotel, but did not pay for Mr. Riahinezhad's meals or other living expenses.

79.  Mr. Riahinezhad periodically had to work for 3S as a chauffeur when 3S's business partners and customers came to visit.  For example, Mr. Riahinezhad recalls driving a representative from Samsung to and from the airport and around the area.  When this happened, Mr. Riahinezhad would work during the day for eight to ten hours.  This at times happened immediately before or after Mr. Riahinezhad worked an all-night driving shift monitoring cell phone signals.

80.  The vehicles Mr. Riahinezhad drove for 3S while monitoring cell phone signals were pickup trucks with small back seats.  Therefore, when Mr. Riahinezhad was sitting in the back seat monitoring cell phone signals, his legs were jammed against the back of the front seat.

81.  Mr. Riahinezhad suffered from a deterioration of both his mental and physical health while he worked for Danesh and 3S.  He suffered from severe back and leg pain, leg numbness,

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

headaches, irritability, anxiety, depression, confusion, and insomnia.

82.   3S did not pay Mr. Riahinezhad anywhere near the salary 3S had promised him.  His wage was approximately $13.50 per hour.

83.   Mr. Riahinezhad complained to Danesh about his schedule, his wages, and the type of work he was doing; particularly that it was not the work he had been promised. Danesh told Mr. Riahinezhad he would be fired, he would lose his visa, and he would have to return to Iran if he kept complaining.

84.   Mr. Riahinezhad knew of two other workers who had been fired and possibly deported for complaining:

(a)   Danesh forced one worker, an electrical engineer from Iran, to work digging ditches.  The worker suffered an on-the-job injury and, upon information and belief, asked Danesh if 3S would pay for his medical expenses and to allow him time to recover. Danesh fired him and revoked his visa.

(b)   Danesh told a worker from Mexico he had to transfer from Texas to Washington.  When the worker complained, Danesh revoked his green card application.

85.   Danesh and 3S supervisors closely monitored Mr. Riahinezhad.  There were cameras at the house in Dallas and 3S's offices.  The 3S vehicles Mr. Riahinezhad was forced to drive

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 17

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

had GPS tracking devices.

86.   Because, while he was in Iran, Danesh and 3S, through agent Mr. Delavari, promised Mr. Riahinezhad his H-1B visa would convert into a green card, Mr. Riahinezhad frequently inquired about this with Danesh.

87.   On several occasions in 2012, starting in January 2012, Danesh told Mr. Riahinezhad 3S would sponsor him for a green card..

88.   In March 2012, Mr. Riahinezhad told Danesh he would have to pay $30,000 to Danesh for the green card.  Mr. Riahinezhad told Danesh he could not afford to pay $30,000. Danesh told him he could pay $20,000 instead.  Mr. Riahinezhad initially had understood that the cost of the green card application was included in the exorbitant fees he had already paid in Iran and in the United States.  Danesh told him it was not, and he had to pay him the $20,000 to get the green card.

89.   To make Mr. Riahinezhad think he was getting a good deal by paying $20,000, Danesh falsely represented to Mr. Riahinezhad that other 3S employees paid $80,000 to Danesh for a green card.

90.   In or about March 2012 Mr. Riahinezhad paid $10,000 to Danesh, deposited to an account in Chase Bank, before Danesh submitted the green card application.  He paid an additional $5,000 when the I-130 was approved, and the remaining $5,000 by wire transfer after he received his green card.

91.   As part of the green card application, 3S submitted an

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 18

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

Application for Permanent Employment Certification (ETA Form 9089). The Form 9089 includes an "Employer Declaration" certifying that the "job opportunity's terms, conditions, and occupational environment are not contrary to Federal, state or local law." U.S. Department of Labor regulations prohibit an employer from "seek[ing] or receiv[ing] payment of any kind for any activity related to obtaining permanent labor certification." 20 C.F.R. § 656.12(b). Specifically prohibited payments include attorneys' fees where the attorney represents the worker and the employer, as well as "monetary payments ..., kickbacks, bribes, or tributes." *Id.*

92. Upon information and belief, Danesh signed the Employer Declaration on a Form 9089 to secure Permanent Labor Certification as part of Mr. Riahinezhad's green card process.

93. At the time Danesh, upon information and belief, signed the Employer Declaration on the Form 9089, he knew he was receiving from Mr. Riahinezhad a monetary payment, kickback, bribe, or tribute to Danesh. In addition or alternatively, to the extent that part or all of the monetary payment was for attorneys' fees, the attorney was representing both Mr. Riahinezhad and 3S.

94. In 2012, Mr. Riahinezhad was informed that he must report to Livermore, California, despite his family living in Dallas. Mr. Riahinezhad complied with the instruction to move to Livermore. After arriving in California. Mr. Riahinezhad was not allowed to visit his family in Dallas for three to four months.

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 19

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

Ultimately, Mr. Riahinezhad moved his whole family to California, at substantial expense. Because Mr. Riahinezhad was not given any time off for the move, he flew to Dallas, helped load his family's belongings into a rental truck, and drove to Livermore without any rest.

95. In all, the move cost Mr. Riahinezhad approximately $5,000. 3S did not pay for any of Mr. Riahinezhad's moving costs.

96. Once in California, Mr. Riahinezhad's duties changed. 3S was routinely understaffed. Mr. Riahinezhad became responsible for reception, vehicle maintenance, cleaning, timesheets, manual labor, and other tasks whatever and whenever assigned. He was not a Project Engineer.

97. On August 12, 2016, 3S terminated Mr. Riahinezhad's employment. Among the purported grounds for the termination was Mr. Riahinezhad's founding of a competing business, Zenisco, Inc. ("Zenisco") in 2015. This was stated as a secondary to an alleged lack of performance with respect to the cause for termination. In fact, Mr. Riahinezhad had informed Danesh of his intent to form Zenisco and of its eventual founding. Zenisco was originally founded as a general contractor in California, primarily seeking business performing residential remodels.

98. At the time Zenisco was founded, 3S's California office where Mr. Riahinezhad was employed was in the process of shutting down. Mr. Riahinezhad founded Zenisco not to compete with 3S, but rather to provide for his family after the expected

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 20

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA 98127-0567
(206) 789-2511
FAX: (206) 789-4484

closure of the 3S office in California and his being out of a job.

99.   Rather than terminating Mr. Riahinezhad, 3S offered him a transfer to Washington. Mr. Riahinezhad took the transfer and allowed Zenisco to go dormant while he continued to work for 3S.

100. Mr. Riahinezhad received notice of his termination by email. The email states in part "we do not intend at this point, to take legal action against you and your company (Zenisco)", but then continued on to threaten legal action.

101. In response to his termination, Mr. Riahinezhad requested that he be paid out 54.20 hours of accrued vacation time and 37.36 hours of sick time. The request was denied on the false, blanket claim that "Washington does not require payment of unused vacation upon separation of employment."

102. After his termination, Mr. Riahinezhad bid jobs through Zenisco for the design, installation, and construction of cell phone towers operated by major cell carriers. The bidding process for such contracts is public, the requirements are posted online, and any qualified contractor can submit a bid.

103. Mr. Riahinezhad was not bound by any sort of noncompetition or nonsolicitation agreement by 3S.

104. Notwithstanding the fact that Mr. Riahinezhad had been upfront with Danesh about the founding of Zenisco, and the fact that the contracts were open for public bidding, Danesh and 3S

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

are still engaged in a now five-year retaliatory legal campaign against Mr. Riahinezhad.

105. The legal campaign against Mr. Riahinezhad, which began with threats in his termination email, continued in October of 2016, when Mr. Riahinezhad received a demand letter alleging theft of property and misappropriation of trade secrets. Mr. Riahinezhad responded through counsel indicating that the allegations were without merit.

106. On May 20, 2019, 3S initiated a lawsuit against Mr. Riahinezhad, Zenisco, and Mr. Riahinezhad's former business partner in Zenisco, Shahrooz Taebi. The lawsuit was filed under King County Cause No. 19-2-13405-4 SEA. 3S brought claims for breach of contract, breach of the covenant of good faith and fair dealing, conversion, and tortious interference.

107. Mr. Taebi brought a Motion to Dismiss based upon the failure to properly effectuate service and expiration of the statute of limitations. Mr. Riahinezhad and Zenisco joined the motion. In the hearing on the Motion to Dismiss, 3S counsel admitted that 3S filed the claim notwithstanding 3S not having a contract with Mr. Riahinezhad. The Court dismissed the lawsuit without prejudice based on lack proper service. The Court declined to dismiss with prejudice on the statute of limitations on the basis of representations by 3S that it would be able to present evidence in the future that would bring its claims within the statute of limitations.

108. 3S initiated this action on December 21, 2019, re-

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 22

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

hashing the allegations made under Cause No. 19-2-13405-4 SEA, including the admittedly frivolous contract claim, and asserting a plethora of additional meritless claims. Mr. Riahinezhad moved for summary judgment dismissal of 3S's claims and all of 3S's claims were dismissed with prejudice. This Court held that 3S presented no evidence whatsoever bringing its claims within the statute of limitation, let alone proving them.

109. 3S's termination of Mr. Riahinezhad, the harassing demand letters making false claims against Mr. Riahinezhad, and the subsequent frivolous litigation were designed to intimidate, retaliate against, and punish Mr. Riahinezhad for seeking employment and business opportunities outside of 3S's operations.

110. Over the course of his employment by 3S and Danesh, Mr. Riahinezhad was undercompensated by at least $178,000.00. That figure does not account for unpaid overtime, fees and out-of-pocket expenses Mr. Riahinezhad paid that 3S was legally obligated to pay, and other damages.

111. 3S, Danesh, and Mr. Delavari collected approximately $58,000.00 from Mr. Riahinezhad during his first two years in the United States. With the additional costs of travel, the cost of moving to and throughout the United States at the behest of 3S, and unreimbursed out-of-pocket costs Mr. Riahinezhad incurred that were for the benefit of 3S, Mr. Riahinezhad effectively earned no income during his first two years working in the United States.  He was indentured to Danesh and 3S.

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 23

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

112. Based on the threats of deportation, because Mr. Riahinezhad had borrowed and spent so much money for the visa, travel, and work, and because of the stigma he would face from his family, and from community in Iran if he returned, he reasonably felt like he had no choice but to continue working for 3S.

113. Because the wages were far lower than what 3S had promised him and the work and working conditions were deplorable and hazardous, Mr. Riahinezhad would have left his employment with 3S if he could. However, he reasonably believed he could not leave.

114. On March 19, 2020, Mr. Riahinezhad filed his First Amended Counterclaims and Third-Party Claims, adding Ramin Delavari and Delavari Immigration Services as third-party defendants.

115. Mr. Delavari and Delavari Immigration Services were duly and properly served with a 60-day summons on April 18, 2021.

116. On May 24, 2021, Jeffrey M. Wheat of Cisneros Wheat Legal PLLC appeared on behalf of Mr. Delavari and Delavari Immigration Services.

117. After Mr. Wheat appeared, he engaged in initial discussions with counsel for 3S and counsel for Mr. Riahinezhad regarding scheduling and other preliminary matters. He also encouraged Mr. Riahinezhad's counsel to dismiss their claims.

118. On July 6, 2021, Mr. Wheat sent the following email to

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 24

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA 98127-0567
(206) 789-2511
FAX: (206) 789-4484

all counsel (specific references to alleged immigration and
criminal violations redacted by counsel for Mr. Riahinezhad;
highlight and underline is Mr. Wheat's):[4]

| | |
|---|---|
| **From:** | Jeffery Wheat <Jeff@wheatlegal.com> |
| **Sent:** | Tuesday, July 6, 2021 4:29 PM |
| **To:** | Scott McKay |
| **Cc:** | dan@decaturlegal.com; Daniel Foe; Luis Cisneros; Sahar Jalili; Christine Phillips |
| **Subject:** | Re: Riahinezhad v. 3S Network Inc. et al -- Stipulated Motion/Order Continuance & Deps |

I still don't know that date either.  Sorry, my paralegal returns from Mexico tomorrow.  It's better for the clerks and better for me if she handles those interactions.  Otherwise, someone usually starts yelling.

I must attend the depositions.  I don't *want* to attend those depositions, but I will need to, yes.  I think I saw one set of subpoenas, but if one of you guys could forward me something with all the dates and times I would appreciate it.

I would also appreciate it if someone sent me over a copy of what's in the docket to spare my client the expense of downloading it all from the court @ 0.25 per page.  I really don't want to have to review the appellate stuff.  Please don't make me.  C'mon.  Dismiss my guy.  You know you want to.

Here's what I already have from the docket:

| Name | Size | Date Modified |
|---|---|---|
| 01 SummonsandCommercialComplaint.pdf | 242 kB | 6/18/21, 11:17:49 AM |
| 122 OrderforContinuanceofTrialDate.pdf | 734 kB | 5/24/21, 10:13:23 AM |
| 123 OrderAmendingCaseSchedule.pdf | 352 kB | 5/24/21, 10:13:31 AM |
| 125 Notice-OFFINALREQUESTFORCR26CONFERENCE.pdf | 132 kB | 5/24/21, 10:08:47 AM |
| 126 AffidavitDeclarationCertificateOfService-Served.pdf | 10.3 kB | 7/1/21, 3:53:31 PM |
| 127 AffidavitDeclarationCertificateOfService-Served.pdf | 2.1 MB | 7/1/21, 3:54:03 PM |
| 25 MotionforSummaryJudgment.pdf | 397 kB | 6/9/21, 2:48:35 PM |
| 26 Declaration-OFADAMCDOUPEINSUPPORTOFMOTIONFORSUMMA.pdf | 3.5 MB | 6/9/21, 2:48:58 PM |
| 29 MotionforSummaryJudgment.pdf | 2.6 MB | 6/9/21, 2:49:07 PM |
| 35 Response-TOMOTIONFORSUMMARYJUDGMENT.pdf | 1.3 MB | 6/9/21, 2:49:21 PM |
| 37 Response-TOMOTIONFORSUMMARYJUDGMENT.pdf | 1.6 MB | 6/9/21, 2:49:34 PM |
| 49 OrderDismissingLitigant-ZENISCOINCANDRIAHINEZHAD.pdf | 555 kB | 5/24/21, 10:07:25 AM |
| 50 OrderGrantingSummaryJudgment-FORLACKOFJURISDICTION.pdf | 360 kB | 5/24/21, 10:07:34 AM |
| 53 MotionandAffidavitDeclaration-FORATTORNEYFEES&COS.pdf | 416 kB | 5/24/21, 10:07:45 AM |
| 54 Declaration-OFADAMCDOUPEINSUPPORTOFMOTIONFORATTOR.pdf | 2.0 MB | 5/24/21, 10:07:52 AM |
| 60 NoticeofAppealtoCourtOfAppeals.pdf | 952 kB | 5/24/21, 10:08:01 AM |
| 62 Response-TODEFENDANTMOTIONFORATTORNEYSFEES.pdf | 710 kB | 5/24/21, 10:12:45 AM |
| 63 Response-REATTORNEYFEES&COSTS.pdf | 87.4 kB | 5/24/21, 10:12:32 AM |
| 65 Motion-TOSTRIKERESPONSE.pdf | 780 kB | 5/24/21, 10:12:21 AM |
| 67 Motion-TOSTRIKEPLAINTIFFRESPONSETOMOTIONFORATTORNEY.pdf | 1.4 MB | 5/24/21, 10:12:10 AM |
| 70 DemandforJury-12Person.pdf | 768 kB | 5/24/21, 10:12:00 AM |

---

[4] The redacted sections contain specific representations of what
Mr. Wheat alleges are immigration and criminal violations
committed by Mr. Riahinezhad, 3S, and Mr. Danesh.  Mr.
Riahinezhad will seek to file the entire unredacted email under
seal at a later date.

SECOND AMENDED COUNTERCLAIMS, AND THIRD-
PARTY CLAIMS - 25

**Mullavey, Prout, Grenley & Foe, LLP**
2401 NW 65ᵗʰ
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

Here the download link for the commercial my client made and Mr. Riahinezhad refers to.  You will need to use VLC to view the movie.  I only recently learned that television commercials can violate the wire fraud statute, and maybe this is your RICO predicate act?  (Not that this commercial ever aired in Washington State)

I'd like to ask a dumb question here: have you guys considered referring this matter to the DOJ?  They may be better equipped to deal with an investigation like this.

I think I am going to have to fall back on that old movie adage, "Listen, here's the thing. If you can't spot the sucker in the first half hour at the table, then you ARE the sucker."  I am starting to feel like I am the sucker here.  I understand that there's this whole long history between the parties and yadda yadda yadda.  Ok, great, got it.  Well, my guy - Mr. Delavari - has nothing to do with this.  I would like you guys to _**consider**_ the peril and what the legal consequences will be for Mr. Riahinezhad when it's discovered he lied ████████████████████████████████████.  Jesus, Allah, and Moses he states openly as fact in his pleadings that he ███████████████████████████████████████

1

████████████████████████████████  He and his entire family could be denied citizenship and have their visas and citizenship revoked because of this.  This is not an idle threat, and definitely not something Mr. Delavari wishes to see happen to Mr. Riahinezhad or his family.  And let me be clear, referring to a client's immigration status in civil proceedings is verboten under RPC 4.4 since it's basically racist extortion, and my client is under strict instructions from me to stfu on this count.  However, RPC 8.4(h) says, "(h) ...  ==This Rule does not restrict a lawyer from representing a client by advancing material factual or legal issues or arguments.=="  You guys are really playing with fire here.

I would also like you guys to consider the legal consequences for Mr. Danesh and 3S if my client brings up the ████ ████████████████  Mr. Delavari has knowledge of.  Of course it has nothing to do with Mr. Riahinezhad, but my client is happy to destroy both your clients on an equal opportunity basis.

If your clients want to fight; have at it, but bringing in my guy is just suicidal.  It's mutually assured destruction.

That said, you guys will hear back from me shortly when we note that motion.

Respectfully,

Cisneros Wheat Legal PLLC

Jeffery M. Wheat, Partner

Firm: (206) 262-7381 Cell: (425) 200-4586

This e-mail and any attachments are intended solely for the use of the individual or entity to whom it is addressed.  It may contain information that is privileged, confidential and exempt or protected from disclosure under applicable law.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any review, use, disclosure, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately and destroy all copies and attachments.

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 26

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA 98127-0567
(206) 789-2511
FAX: (206) 789-4484

119. In the email presented in paragraph 118, Mr. Wheat, acting in his capacity as an agent for Mr. Delavari and Delavari Immigration Services, uses the threat of immigration and criminal consequences to attempt to force Mr. Riahinezhad to dismiss his claims against his clients.

### III. Causes of Action

**First Counterclaim and Third-Party Claim: Violations of the Trafficking Victims Protection Act (TVPA), 18 U.S.C. §§ 1589, §§ 1590 and 1594(b).**

120. The allegations set forth in Counterclaim and Third-Party Claim Paragraphs 1-119 are re-alleged as if fully stated herein.

121. This count sets forth Mr. Riahinezhad's claims under the civil remedies provision of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C, § 1595, against Plaintiff 3S Network, Inc. and against Third-Party Defendants Saied Danesh ("Danesh"), Ramin Delavari, and Delavari Immigration Services.

122. 3S, Danesh, Delavari, and Delsvari Immigration Services (collectively, "the Traffickers") knowingly provided and/or obtained Mr. Riahinezhad's labor or services.

123. The Traffickers knowingly attempted to and did threaten Mr. Riahinezhad with serious harm to recruit and/or

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 27

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

obtain his labor or services, in violation of 18 U.S.C. § 1589(a)(1).

124. The Traffickers knowingly attempted to and did obtain the labor and services of Mr. Riahinezhad using a scheme, plan, or pattern which, in the totality of the circumstances, was intended to coerce and did coerce Mr. Riahinezhad to believe he would suffer serious harm if he were to leave the employ of the 3S and Damesh, in violation of 18 U.S.C. § 1589(a)(2).

125. The Traffickers' scheme to

    (a)  force Mr. Riahinezhad to pay undisclosed, ever-increasing, and unlawful fees;

    (b)  to force Mr. Riahinezhad to live in the United States with for several months while he waited for the issuance of his H-1B visa and the beginning of his job with 3S;

    (c)  to force Mr. Riahinezhad to pay for his and his family's moving expenses from Iran to the United States and within the United States;

    (d)  to force Mr. Riahinezhad to pay work-related expenses out-of-pocket;

    (e)  to work Mr. Riahinezhad to the point of exhaustion, illness, injury, and lack of mental clarity in a job that was nothing like the position he understood he was recruited to take on or the position the Traffickers swore under penalty of

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

perjury Mr. Riahinezhad would have; and

(f)   to threaten Mr. Riahinezhad with deportation if
      he complained or did not comply with the onerous
      terms and conditions of employment

were designed to convince Mr. Riahinezhad he would
suffer serious harm if he were to leave the employ of the
Traffickers, in violation of 18 U.S.C. § 1589(a)(2).

126. The Trafficker's scheme, both during the time in which
Mr. Riahinezhad was employed by Danesh and 3S, and after Mr.
Riahinezhad ceased performing work for Danesh and 3S, to
continuously subject him to an abusive campaign of legal threats
and lawsuits designed to prevent him from asserting his rights,
including

(a)   Danesh and 3S's threats to cancel Mr.
      Riahinezhad's H-1B visa and green card process and
      consequently force his departure from the United
      States;

(b)   a series of threatening letters directed at Mr.
      Riahinezhad from human resources and at least one
      attorney alleging a variety of misconduct (including
      some of that which is alleged in this lawsuit);

(c)   an initial lawsuit presenting many of the same
      causes of action stated in this lawsuit (which was
      dismissed);

(d)   this lawsuit against Mr. Riahinezhad (which has
      been dismissed and is pending appeal); and

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

> (e)   in his capacity as agent for Delavari and
> Delavari Immigration Services, attorney Jeffrey
> Wheat's July 6, 2021 email, described in paragraph
> 118, *supra*, threatening immigration and criminal
> consequences if Mr. Riahinezhad did not dismiss his
> claims against Delavari and Delavari Immigration
> Services
>
> constitute abuse of legal process, in violation of 18
> U.S.C. § 1589(a)(3).

127. The Traffickers knowingly benefited, financially or by receiving anything of value from participating in a venture they knew, should have known, or were in reckless disregard for the fact of it being engaged in subjecting Mr. Riahinezhad to forced labor, in violation of 18 U.S.C. § 1589(b) and as set forth in 18 U.S.C. § 1595(a).

128. The Traffickers knowingly recruited, provided, and/or obtained Mr. Riahinezhad for the purpose of forced labor, in violation of 18 U.S.C. § 1590(a).

129. By threatening immigration and criminal consequences if Mr. Riahinezhad did not dismiss his claims against Delavari and Delavari Immigration Services, Delavari and Delavari Immigration Services obstructed, attempted to obstruct, and/or interfered with the enforcement of Mr. Riahinezhad's 18 U.S.C. § 1590(a) claims, in violation of 18 U.S.C. § 1590(b).

130. The Traffickers conspired to violate 18 U.S.C. §§ 1589 and 1590(a), in violation of 18 U.S.C. § 1594(b), in that the

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 30

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

Traffickers entered into a joint enterprise to subject Mr. Riahinezhad to forced labor and trafficking with respect to forced labor with consciousness of its general nature and intent.

131. Upon information and belief, the Traffickers conspired to violate 18 U.S.C. § 1589, in violation of 18 U.S.C. § 1594(b), in that the Traffickers entered into a joint enterprise to subject Mr. Riahinezhad to forced labor with consciousness of its general nature and intent.

132. The conduct of the Traffickers has caused Mr. Riahinezhad physical injuries, significant emotional distress, and economic injuries.

133. Mr. Riahinezhad is entitled to compensatory damages, including compensation for economic injuries, physical injuries, emotional distress, punitive damages, and attorney's fees and costs as a direct and proximate result of the Traffickers' violations of 18 U.S.C. §§ 1589 and 1594(b), in an amount to be determined at trial.

**Second Counterclaim and Third-Party Claim: Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 USCS §§ 1961-1964.**

134. The allegations set forth in Counterclaim and Third-Party Claim Paragraphs 1-133 are re-alleged as if fully stated herein.

135. This count sets forth Mr. Riahinezhad's claims under the civil remedies provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C, § 1964(c), against

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

Plaintiff 3S Network, Inc. and Third-Party Defendants Danesh
("Danesh"), Ramin Delavari, and Delavari Immigration Services
(3S Network, Inc.; Danesh, Delavari, and Delavari Immigration
Services collectively, "the Racketeers").

136. Mr Riahinezhad is a "person" with standing to sue
within the meaning of 18 U.S.C. § 1594(c).

137. Each of the Racketeers is a "person" within the
meaning of 18 U.S.C. § 1961(3).

138. At all relevant times, the Racketeers and Aron Hasson
were an enterprise ("3S Association Enterprise") in that they
were associated in fact although not a legal entity, within the
meaning of 18 U.S.C. § 1961(4).

139. At all relevant times, the Racketeers, Aron Hasson,
and 3S's clients, including Verizon, Spring, Ericsson, SAC
Wireless, General Dynamics, Bechtel, LG, and Samsung, *see* Compl.
at ¶ 8, were an enterprise ("3S Association-Customer
Enterprise") in that they were associated in fact although not a
legal entity, within the meaning of 18 U.S.C. § 1961(4).

140. The 3S Association Enterprise and the 3S Association-
Customer Enterprise (collectively, "the 3S RICO Enterprises")
have the common purpose of obtaining workers to set up and test
cell phone towers.

141. At all relevant times, Delavari, Delavari Immigration
Services, and attorney Jeffrey Wheat were an enterprise
("Delavari RICO Enterprise") in that they were associated in
fact although not a legal entity, within the meaning of 18

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

U.S.C. § 1961(4).

142. The Delavari RICO Enterprise has the common purpose of defending Delavari and Delavari Immigration Services against legal claims.

143. The 3S RICO Enterprises and the Delavari RICO Enterprise (collectively, "the RICO Enterprises") are engaged in interstate commerce in that their activities and transactions affect interstate commerce; frequently require travel, communications, and movement of goods and/or services across state lines.

144. The 3S RICO Enterprises also are engaged in interstate commerce in that the cell phone towers they set up and test are for the purpose of interstate and international telecommunications.

145. The RICO Enterprises function as continuing units.

146. The Racketeers conducted or participated in the affairs of the respective RICO Enterprises through a pattern of numerous acts of racketeering activity in violation of 18 U.S.C. § 1962(c), related by their common business purposes.

147. The Racketeers conspired to conduct or participate in the affairs of the RICO Enterprises through a pattern of numerous acts of racketeering activity in violation of 18 U.S.C. § 1962(d).

148. All conduct of the RICO Enterprises and each member of the RICO Enterprises was for the benefit of the respective RICO Enterprises and each component individual and entity.

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 33

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA 98127-0567
(206) 789-2511
FAX: (206) 789-4484

149. Specifically, the Racketeers conducted or participated in the affairs of the respective RICO Enterprises, or conspired to do so, by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

      (a)  Mail fraud in violation of 18 U.S.C. § 1341;

      (b)  Wire fraud in violation of 18 U.S.C. § 1343;

      (c)  Fraud in foreign labor contracting in violation of 18 U.S.C. § 1351;

      (d)  Forced labor in violation of 18 U.S.C. § 1589; and

      (e)  Trafficking for the purpose of forced labor, in violation of 18 U.S.C. § 1590(a).

150. Further, Delavari and Delavari Immigration Services conducted or participated in the affairs of the Delavari RICO Enterprise by engaging in the following predicate acts of racketeering activity under 18 U.S.C. § 1961(1):

      (a)  Extortion in violation of RCW 9A.56.130; and

      (b)  Obstructing the enforcement of claims of trafficking for the purpose of forced labor, in violation of 18 U.S.C. § 1590(b).

**A.   RICO Predicate Acts**

Mail and Wire Fraud: 18 U.S.C. §§ 1341 and 1343

151. As set forth in the preceding paragraphs, the Racketeers, through the respective RICO Enterprises, made and/or conspired to make material misrepresentations to Mr. Riahinezhad

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

and to the U.S. government regarding pre-employment and permanent labor certification fees and costs, the wages Mr. Riahinezhad would receive, the hours Mr. Riahinezhad would work, and the position Riahinezhad would have at 3S.

152. As set forth in the preceding paragraphs, the Racketeers, though the respective RICO Enterprise, used and/or conspired to use the mails and wire communications, including communications via telephone, fax, internet, and/or email, on numerous occasions to further these fraudulent schemes.

153. These willful, knowing, and intentional acts constitute mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

### Fraud in Foreign Labor Contracting: 18 U.S.C. § 1351

154. As set forth in the preceding paragraphs, the Racketeers, through the respective RICO Enterprises, knowingly and with intent to defraud did and/or conspired to recruit, solicit, and hire Mr. Riahinezhad outside the United States, for the purpose of employment in the United States by means of materially false or fraudulent pretenses, representations, or promises regarding pre-employment fees and costs, the wages Mr. Riahinezhad would receive, the hours Mr. Riahinezhad would work, and the position Riahinezhad would have at 3S.

155. These willful, knowing, and intentional acts constitute fraud in foreign labor contracting in violation of 18 U.S.C. § 1351.

SECOND AMENDED COUNTERCLAIMS, AND THIRD-
PARTY CLAIMS - 35

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

<u>Forced Labor: 18 U.S.C. § 1589</u>

156. As set forth in the preceding paragraphs, the Racketeers, through the respective RICO Enterprises, did and/or conspired to knowingly provide and/or obtain Plaintiff's labor or services, or attempted to do so, by:

(a)   serious harm or threats of serious harm; and/or

(b)   abuse or threatened abuse of law or legal process; and/or

(c)   a scheme intended to cause Plaintiff to believe that if he did not perform labor or services for Defendants, he would suffer serious harm or physical restraint.

157. These knowing acts constituted forced labor, in violation of 18 U.S.C. § 1589.

<u>Trafficking with Respect to Forced Labor: 18 U.S.C. § 1590(a)</u>

158. As set forth in the preceding paragraphs, the Racketeers, through the respective RICO Enterprises, did and/or conspired to knowingly recruit, provide, and/or obtain Plaintiff's labor or services, in violation 18 U.S.C. § 1589.

159. These knowing acts constituted trafficking with respect to forced labor, in violation of 18 U.S.C. § 1590(a).

<u>Obstruction of the Enforcement of Claims of Trafficking with Respect to Forced Labor: 18 U.S.C. § 1590(b)</u>

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

160. As set forth in the preceding paragraphs, Delavari and Delavari Immigration Services, though the Delavari RICO Enterprise, obstructed, attempted to obstruct, or interfered with the enforcement of claims of trafficking with respect to forced labor.

161. These knowing acts constituted obstruction of the enforcement of claims of trafficking with respect to forced labor, in violation of 18 U.S.C. § 1590(b).

**B.    Pattern of Racketeering Acts**

162. The Racketeers did or conspired to engage in the racketeering activity described in this Claim repeatedly and continually.

163. Upon information and belief, the 3S Network and Danesh continue to seek new H-1B workers for employment at 3S who may presently be subjected, through the 3S RICO Enterprises, to similar racketeering activities.

164. Delavari and Delavari Immigration Services, through the Delavari RICO Enterprise, engaged in the racketeering activity in a manner that is specifically threatened to be repeated or to extend indefinitely into the future.

165. The Racketeers, through the RICO Enterprises, rely on the racketeering acts described in this Complaint to conduct their regular business activities.

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

166. The Racketeers' racketeering acts have or had similar purposes: to profit from the fraudulent recruitment of Mr. Riahinezhad and other H-1B workers for employment at 3S.

167. Each of the Racketeers' acts yielded similar results and caused similar injuries to Mr. Riahinezhad, including the fees Mr. Riahinezhad paid to the Racketeers, moving expenses, out-of-pocket expenses and fees that 3S was legally required to pay, the underpayment of wages, lost business opportunities, and fees and costs.

168. As set forth in the preceding paragraphs, the racketeering acts have or had similar participants: the Racketeers and their agents.

169. As set forth in the preceding paragraphs, the Racketeers, through the RICO Enterprises, directed their racketeering activities at similar individuals and entities, including Mr. Riahinezhad, other H-1B workers, and federal government agencies.

170. The Racketeers' acts have or had similar methods of commission, such as common recruitment tactics, consistent practices with respect to collecting payments from Mr. Riahinezhad and other H-1B workers, use of similar employment practices and policies with respect to Mr. Riahinezhad and other H-1B workers.

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 38

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

C.    **Injury and Remedies**

171. Mr. Riahinezhad was damaged by the Racketeers' RICO violations in the form of fees Mr. Riahinezhad paid to the Racketeers, moving expenses, out-of-pocket expenses and fees that 3S was legally required to pay, the underpayment of wages, lost business opportunities, and fees and costs.

172. Mr. Riahinezhad is entitled to an award of damages in an amount to be determined at trial, including but not limited to:

(a)  compensation for Mr. Riahinezhad's injuries to his property;

(b)  trebling of the damages set forth in subparagraph (a), *supra*; and

(c)  attorneys' and experts' fees and costs associated with this action, as authorized by 18 U.S.C. § 1964(c).

173. Further, Mr. Riahinezhad is entitled to injunctive relief preventing and restraining violations of the RICO, as set forth in 18 U.S.C. § 1964(a).

**Third Counterclaim and Third-Party Claim: Washington Criminal Profiteering Act: R.C.W. §§ 9A.82,60 and 9A.82.100 (Against Delavari and Delavari Immigration Services)**

174. The allegations set forth in Counterclaim and Third-Party Claim Paragraphs 1-173 are re-alleged as if fully stated

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

herein.

175. Mr. Riahinezhad herein sets forth his claims for damages resulting from Delavari and Delavari Immigration Services' violations of the Washington Criminal Profiteering Act, RCW §§ 9A.82.60 and 9A.82.100 ("Wash. CPA").

176. Mr. Riahinezhad is a person who sustained injury to his person, business, or property by an act of criminal profiteering that is part of a pattern of criminal profiteering activity or by a violation of R.C.W. §§ 9A.82.060. See R.C.W. § 9A.82.100.

177. Delavari and Delavari Immigration Services each are a "person" within the meaning of R.C.W. § 9A.04.110(17).

178. Upon information and belief, Delavari and Delavari Immigration Services knowingly incited and/or induced attorney Jeffrey Wheat to engage in intimidation with the intent to further or promote the accomplishment of a pattern of criminal profiteering activity, in violation of R.C.W. § 9A.82.60(1)(b).

179. Specifically, the criminal profiteering activity set forth in the preceding paragraph includes:

        (a)  Extortion, as defined in R.C.W. § 9A.56.130.  *See* CPA, R.C.W. § 9A.82.10(4)(k).

        (b)  Trafficking, as defined in R.C.W. § 9A.40.100. *See* CPA, R.C.W. § 9A.82.10(4)(tt).

        (c)  Theft, as defined in R.C.W. 9A.56.30. *See* CPA, R.C.W. § 9A.82.10(4)(e).

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 40

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

### A.   CPA Predicate Acts

#### Theft: R.C.W. § 9A.56.30

180. As set forth in the preceding paragraphs, the Delavari and Delavari Immigration Services knowingly incited and/or induced attorney Jeffrey Wheat to engage in intimidation with the intent to further or promote the accomplishment of obtaining from Mr. Riahinezhad and others, by color or aid of deception, to obtain control over Mr. Riahinezhad's and other's property and services, with the intent to deprive Mr. Riahinezhad and others of such property and services.

181. The property and services described in the preceding paragraph exceed $5,000 in value.

182. These intentional acts constituted theft in the first degree, in violation of R.C.W. § 9A.56.30.

#### Extortion: R.C.W. § 9A.56.130

183. As set forth in the preceding paragraphs, the Delavari and Delavari Immigration Services knowingly incited and/or induced attorney Jeffrey Wheat to engage in intimidation with the intent to further or promote the accomplishment of knowingly obtaining or attempting to obtain the property of Mr. Riahinezhad by means of the following wrongful threats:

> (a)  To accuse any person of a crime or cause criminal charges to be instituted against any person;
>
> (b)  To expose a secret or publicize an asserted fact, whether true or false, tending to subject any person

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

to hatred, contempt, or ridicule; and

(c)   To do any other act which is intended to harm substantially the person threatened or another with respect to his or her health, safety, business, financial condition, or personal relationships.

*See* R.C.W. §§ 9A.04.110(d), (e), and (j).

184. These intentional acts constituted extortion in the second degree, in violation of R.C.W. § 9A.56.30.

<u>Trafficking: R.C.W. § 9A.40.100</u>

185. As set forth in the preceding paragraphs, the Delavari and Delavari Immigration Services knowingly incited and/or induced attorney Jeffrey Wheat to engage in intimidation with the intent to further or promote the accomplishment of recruiting and providing Mr. Riahinezhad and others knowing, or in reckless disregard of the fact that fraud or coercion would be used to cause Mr. Riahinezhad and others to engage in forced labor.

186. As set forth in the preceding paragraphs, the Delavari and Delavari Immigration Services knowingly incited and/or induced attorney Jeffrey Wheat to engage in intimidation with the intent to further or promote the accomplishment of benefitting financially or by receiving anything of value from participation in a venture that has engaged in the acts described in the preceding paragraph.

187. These intentional acts constituted trafficking in the second degree, in violation of R.C.W. § 9A.40.100(3).

**Mullavey, Prout, Grenley & Foe, llp**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

**B.    Pattern of Related Profiteering Acts**

188. Delavari and Delavari Immigration Services engaged in profiteering activity repeatedly and continuously since at least 2009.

189. The multiple acts of profiteering activity have the same or similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents.

190. The last such profiteering activity occurred within five years of the prior incident of profiteering activity.

191. The profiteering activity described in this claim is open ended, in that the Delavari and Delavari Immigration Services continue engage in the racketeering activity and will do so indefinitely absent the Court's intervention.

192. The profiteering acts have or had similar purposes: to reap large profits from recruiting providing foreign labor to employers in the United States and to avoid liability for violations of the law committed in the course of recruiting and providing this labor.

193. Each of the Delavari and Delavari Immigration Services' acts yielded similar results and caused similar injuries, including the payment of exorbitant fees and other costs; and personal injuries, including emotional distress.

194. The profiteering acts have or had similar methods of

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

commission.

**C.    Injuries and Remedies.**

195. As a direct and proximate result of Delavari and Delavari Immigration Services' willful, knowing, and intentional acts discussed in this section, Mr. Riahinezhad suffered injuries, including but not limited to emotional distress, fees, and other costs.

196. Mr. Riahinezhad is entitled to an award of damages in an amount to be determined at trial, including but not limited to:

(a)  compensation for his actual damages;

(b)  a civil penalty of $250,000;

(c)  injunctive relief as set forth in R.C.W. §§ 9A.82.100(3) and (4); and

(c)  investigative and attorneys' fees and costs associated with this action, as authorized by R.C.W. § 9A.82.100(1)(a).

**Fourth Counterclaim: Abuse of Legal Process**

**(Against Delavari and Delavari Immigration Services)**

197. The allegations set forth in Counterclaim and Third-Party Claim Paragraphs 1-196 are re-alleged as if fully stated herein.

198. Mr. Riahinezhad herein sets forth his claims for

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 44

**MULLAVEY, PROUT, GRENLEY & FOE, LLP**
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

damages resulting from Delavari and Delavari Immigration Services' abuse of legal process.

199. By threatening Mr. Riahinezhad with criminal and immigration consequences if he did not dismiss his case against Delavari and Delavari Immigration Services, Delavari and Delavari Immigration Services committed abuse of legal process.

200. Delavari and Delavari Immigration Services used criminal and immigration law for a purpose for which they were not intended: to force Mr. Riahinezhad to dismiss his legal claims against Delavari and Delavari Immigration Services.

201. The conduct of the Traffickers has caused Mr. Riahinezhad significant emotional distress and economic injuries.

202. Mr. Riahinezhad is entitled to compensatory damages, including

    (a)  compensation for economic injuries and emotional
    distress;

    (b)  punitive damages;

    (c)  and attorney's fees and costs

as a direct and proximate result of the Delavari and Delavari Immigration Services' abuse of legal process, in an amount to be determined at trial.

203. Further, Mr. Riahinezhad is entitled to injunctive relief preventing and restraining further abuse of legal process.

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 45

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

**Fifth Cause of Action – Intentional Infliction of Emotional Distress (Outrage)**

204. The allegations set forth in Counterclaim and Third-Party Claim Paragraphs 1-203 are re-alleged as if fully stated herein.

205. Neither Delavari nor Delavari Immigration Services is authorized to determine immigration status.

206. Delavari and Delavari Immigration Services did intentionally and knowingly threaten the deportation of Mr. Riahinezhad and his family by and through their agent Jeffrey Wheat.

207. The false threat of deportation was extreme and outrageous conduct.

208. The false threat of deportation was intentionally designed to inflict extreme emotional distress.

209. Mr. Riahinezhad has suffered from extreme emotional distress as the direct and proximate result of the false threat of deportation.

210. The false threat of deportation was beyond all possible bounds of decency and atrocious to the pursuit of justice and utterly intolerable conduct of a litigant.

211. Mr. Riahinezhad has been damaged by Delavari and Delavari Immigration Services intentional infliction of emotional distress in an amount to be proven at trial.

**Reservation of Rights to Amend**

Mr. Riahinezhad reserves the right to amend these

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA 98127-0567
(206) 789-2511
FAX: (206) 789-4484

Counterclaims and Third-Party Claims as new evidence is discovered or existing evidence is developed.

**Counterclaims and Third-Party Claims Request for Relief**

WHEREFORE, having fully set forth their complaint, Mr. Riahinezhad prays for relief as follows:

1.   For judgment against the Traffickers for violations of 18 U.SC. §§1859 and 1594(b) in an amount to be proven at trial;

2.   For judgment against the Racketeers for violation of 18 U.S.C. §§ 1961-1964 in an amount to be proven at trial;

3.   For trebling of the RICO damages proven at trial;

4.   For judgement against Delavari and Delavari Immigration Services for violations of the Washington CPA in an amount to be proven at trial;

5.   For a civil penalty in the amount $250,000 for Delavari and Delavari Immigration Services' violations of the Washington CPA;

6.   For judgment against Delavari and Delavari Immigration Services for intentional infliction of emotional distress (outrage);

7.   For punitive damages;

8.   For injunctive relief preventing and restraining further violations of the law as set forth herein;

9.   For attorney's fees and costs; and

10.  For such other and further relief as the Court deems just and equitable in the premises.

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

DATED this __19th__ day of July 2021.

MULLAVEY, PROUT, GRENLEY & FOE, LLP

By _____
Daniel A. S. Foe, WSBA #42876
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
 FAX: (206) 789-4484

Attorney for Zenisco, Inc. and
Shahrokh Riahinezhad

RADFORD & KEEBAUGH, LLC

By _____
Daniel Werner (*pro hac vice*)
315 W. Ponce de Leon Ave.
Suite 1080
Decatur, Georgia 30030
(678) 271-0300

Attorney for Shahrokh Riahinezhad

SECOND AMENDED COUNTERCLAIMS, AND THIRD-
PARTY CLAIMS - 48

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

## Declaration of Service

I declare under penalty of perjury of the laws of the state of Washington that on the date of execution below, I caused to be served in the manner indicated a true and accurate copy of the following documents:

1.

   DEFENDANT SHAHROKH RIAHINEZHAD'S SECOND AMENDED COUNTERCLAIMS AND THIRD-PARTY CLAIMS

upon the following:

| | |
|---|---|
| Scott McKay<br>Law Office of Scott McKay<br>3614 California Ave SW Ste A<br>Seattle, WA 98116-3780<br>scottjmckay@hotmail.com | ☐  By First Class U.S. Mail Postage Prepaid<br>☒  By King County EFC<br>☐  By Email |
| Jeffery M. Wheat<br>Cisneros Wheat Legal PLLC<br>1201 3rd Ave, Ste 22-120<br>Seattle, WA 98101<br>Jeff@wheatlegal.com | ☐  By First Class U.S. Mail Postage Prepaid<br>☒  By King County EFC<br>☐  By Email |
| Clerk of the Court<br>King County Superior Court | ☐  By First Class U.S. Mail Postage Prepaid<br>☒  By King County EFC<br>☐  By Facsimile |
| Brian C. Graff<br>Adam Doupe<br>Ryan, Swanson & Cleveland, PLLC<br>1201 Third Avenue, Suite 3400<br>Seattle, WA 98101<br>graff@ryanlaw.com<br>doupe@ryanlaw.com | ☐  By First Class U.S. Mail Postage Prepaid<br>☒  By King County EFC<br>☐  By Email |

SECOND AMENDED COUNTERCLAIMS, AND THIRD-PARTY CLAIMS - 49

MULLAVEY, PROUT, GRENLEY & FOE, LLP
2401 NW 65TH
P.O. BOX 70567
SEATTLE, WA  98127-0567
(206) 789-2511
FAX: (206) 789-4484

Daniel R. Prince, WSBA
#48709
Prince Legal
1000 Second Ave Ste 3660         ☐   By First Class U.S.
Seattle, WA 98104                Mail Postage Prepaid
dan@princelegal.com              ☒   By King County EFC
                                 ☐   By Email


Signed this ___19th___ day of ___July,___ 2021 at Seattle, Washington.

MULLAVEY PROUT GRENLEY & FOE,
LLP

*S/ Daniel A. S. Foe*

Daniel A. S. Foe
2401 NW 65th Street
PO Box 70567
Seattle, Washington 98127
dfoe@ballardlawyers.com

SECOND AMENDED COUNTERCLAIMS, AND THIRD-     **MULLAVEY, PROUT, GRENLEY & FOE, LLP**
PARTY CLAIMS - 50                                    2401 NW 65ᵀᴴ
                                                  P.O. BOX 70567
                                           SEATTLE, WA  98127-0567
                                                  (206) 789-2511
                                             FAX: (206) 789-4484